IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Michelle Boateng. *on behalf of herself and all those similarly situated*, | : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. |
| v. | : : | 1:12-cv-01959-WCO |
| Retirement Corporation of America Partners, L.P., | : : : | |
| Defendant. | : | |

# **ORDER**

This matter is before the court on Defendant Retirement Corporation of America Partners, L.P.'s motion for summary judgment [49] and motion to extend time to file motion for summary judgment [58].

**I.   Background**

   **A.   Procedural History and Facts**

Plaintiff, Michelle Boateng, on behalf of herself and all those similarly situated, filed suit against Defendants Retirement Corporation of America Partners, L.P., Leisure Care LLC, Formation Development Group, LLC, HR One Services, Inc., and The Carlyle Group, L.P. on June 6, 2012, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  In an order dated March 5, 2013, the court granted certain Defendants' motion for judgment on the pleadings and motion to dismiss based on whether they could

be considered Plaintiff's "employers." As a result of that order, only Defendant Retirement Corporation of America Partners, L.P. remains in the litigation.

At the time Plaintiff was employed, Retirement Corporation owned and operated a multi-story assisted living facility called the Renaissance on Peachtree. Plaintiff worked as a full-time certified nursing assistant on the night shift. Plaintiff was an hourly employee who clocked in and out at the beginning and end of each shift she worked.

During her orientation, Plaintiff was informed that she was required to take a 30-minute meal break during every shift she worked that was longer than six hours. Plaintiff was also told that 30 minutes would be automatically deducted from each shift she worked to account for her required meal break.

Plaintiff alleges that she never took a complete meal break during any of the night shifts in the eight months she worked for Retirement Corp. Plaintiff never told anyone at Retirement Corp. that her meal break was always interrupted. Plaintiff did not report to HR One, the entity that issued her paychecks, that she never had an uninterrupted break.

While she was working on shift, Plaintiff was required to keep a radio with her at all times, including breaks, even though she was not required to stay in the building or on her floor during her breaks. Plaintiff testified that a supervisor told her she needed to respond to calls on the radio even if she was on break, although Plaintiff could not recall which supervisor gave her that instruction.

2

Plaintiff was often the only certified nurse assistant working on her floor during the night shift. The residents' care needs were not predictable and often interrupted Plaintiff's meal breaks, but Plaintiff also stated that there was more "down time" on the night shift when most residents were sleeping than there was on the day shift. Plaintiff was supposed to notify her supervisor when she went on meal break, but she testified that she could not recall ever telling her shift supervisor she was going on break. Although she asserted in her deposition that her supervisors knew when she was on break, she could not explain how the supervisors were aware of this. Plaintiff did testify that her supervisors knew she worked while on break because they "pretty much just stood there and watched it happen."

In her deposition, Plaintiff testified that she was told different things about to whom she should report a skipped meal break – it was either her shift supervisor, Lilly Smith, or the supervisor of all certified nurse assistants, Jean White. However, Plaintiff then testified that she did not tell either individual about her skipped meal breaks.[1]

---

[1] In her declaration filed in response to Defendant's motion for summary judgment, Plaintiff states that she "was not told what to do about the automatically deducted time when her meal break was missed or interrupted." *See* Boateng Decl., ¶ 13. This testimony, however, contradicts Plaintiff's deposition testimony that she could not remember whether she was supposed to notify Lilly Smith or Jean White to report a skipped meal break. Under *Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984), the court may disregard an affidavit as sham where "a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Id.* at 657.

3

### B. Contentions

Defendant assumes for the purposes of this motion that Plaintiff could show that she did work through at least some of her meal breaks. Even if so, Defendant argues, Plaintiff has admitted she told no one that she had skipped or interrupted meal breaks and therefore the employer did not have actual or constructive knowledge of the fact that she was working through her meal breaks.

Plaintiff responds that Defendant's motion is untimely and should be denied on that basis alone. Furthermore, Plaintiff contends that Eleventh Circuit authority clearly holds that the question of actual or constructive knowledge is an issue of fact and not appropriate for resolution on summary judgment. Plaintiff argues that she has presented sufficient evidence from which a jury could conclude that her employer had actual and/or constructive knowledge of her interrupted meal breaks because she testified that (1) the interruptions of her breaks came from her supervisors and (2) her supervisors "stood there and watched" her work during her meal breaks.

## II. Discussion

### A. Motion for Extension of Time

Plaintiff argues that Defendant's motion for summary judgment is untimely. Plaintiff states that under the court's June 26, 2013, Scheduling Order, discovery commenced 30 days after the appearance of the first defendant by answer to the complaint. Here, Defendant

answered the amended complaint on May 3, 2013, and discovery would commence on June 2, 2013. According to Plaintiff, the parties asked for a six month discovery track, which would place the close of discovery on December 2, 2013, and summary judgment motions due on January 1, 2014. Defendant filed its motion for summary judgment on January 14, 2014.

Defendant responds that on the same day it filed its answer, it also filed a motion to stay pending the court's ruling on Defendant HR One Services, Inc.'s motion to dismiss. Almost three weeks later, when Plaintiff filed a stipulation of dismissal of Defendant HR One Services, Inc., the court terminated Defendant's motion to stay on May 23, 2013, without ruling on it. The parties then filed their Joint Preliminary Report and Discovery Plan on June 21, 2013. Defendant argues, therefore, that because of the pending motion to stay, the discovery period commenced upon the filing of the Joint Preliminary Report and Discovery Plan on June 21, 2013, and ended on December 21, 2013, not December 2, 2013. In furtherance of its position, Defendant notes that Plaintiff's deposition was taken without comment or special arrangements on December 16, 2013, outside of the date on which Plaintiff now asserts discovery had closed.

The court finds it need not determine the actual date of the close of discovery. Even assuming Plaintiff's date of a December 2, 2013, close of discovery, the court finds that Defendant has shown "excusable neglect" under Rule 6(b)(1)(B) for a brief extension of two

5

weeks to file its summary judgment motion. Defendant filed a motion to stay to which Plaintiff never responded. Although the court never ruled on Defendant's motion to stay, the court may still find that Plaintiff did not oppose such a motion because Plaintiff did not file a response. *See* LR 7.1(B), NDGa. Plaintiff then agreed to dismiss the defendant whose motion to dismiss prompted the motion to stay, and the parties filed their Joint Preliminary Planning Report on June 21, 2013, asking for a six month discovery period. The court finds Defendant had reason to believe that the discovery period would start from that date. Furthermore, the conduct of the parties demonstrates that even Plaintiff believed the discovery period extended through December 21, 2013, because Plaintiff agreed to have her deposition taken on December 16, 2013, without any special accommodations, belying her contention now that discovery had closed on December 2, 2013. Moreover, Plaintiff cannot demonstrate any prejudice she would suffer from this decision as Defendant filed its motion for summary judgment within 30 days of Plaintiff's deposition and only two weeks after the date on which Plaintiff contends such a motion was due.

As such, the court GRANTS NUNC PRO TUNC Defendant Retirement Corporation of America Partners, L.P.'s motion to extend time to file motion for summary judgment [58].

### B.     Employers' Actual or Constructive Knowledge

The Fair Labor Standards Act provides that an employer may not employ his employee for more than 40 hours per week unless the employee receives overtime

compensation of a rate of at least one and a half times his regular rate. 29 U.S.C. § 207(a)(1). "[I]f the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Dep't of Conservation & Nat. Res.*, 29 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11). A plaintiff must demonstrate that (1) he worked overtime without compensation and (2) the employer knew or should have known of the overtime work. *See*, *e.g.*, *Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306 (11th Cir. 2007); *see also* 29 C.F.R. § 785.11 (interpreting "suffer or permit to work" requirement to mean that employer violates FLSA when it "knows or has reason to believe that he is continuing to work and the time is working time").

In *Allen*, the court addressed summary judgment consideration of whether an employer had actual or constructive knowledge that an employee was working overtime. There, the plaintiffs were bus drivers, paraprofessionals, secretaries, and custodians, who alleged that the school district's method for computing time violated the Fair Labor Standards Act. One of the plaintiffs testified that her supervisor told her that she could not continue to work overtime and she would need to take compensatory leave. 495 F.3d at 1318. The *Allen* court found this testimony sufficient to raise a genuine issue of material fact as to whether the employer had actual knowledge the plaintiff was working overtime. *Id.* Another employee said that she attended meetings where her supervisor told her she could not approve overtime, but the supervisor did not say that employees should not work

7

overtime. *Id.* at 1319. The plaintiff stated she worked three or four Saturdays to prepare paperwork for teachers and on several of those occasions her supervisor was also at the school at the same time. The plaintiff also testified that she told her supervisor that she brought work home to complete. Again, the court found this testimony created a genuine issue of material fact as to whether the employer had actual knowledge the plaintiff was working overtime. *Id.*

The *Allen* court next considered the issue of constructive knowledge. *Id.* at 1319. "An employer is said to have constructive knowledge of its employee's overtime work when it has reason to believe that its employee is working beyond his shift." *Id.* (citing 29 C.F.R. § 785.11). "The employer's knowledge is measured in accordance with his duty . . to inquire into the conditions prevailing in his business." *Id.* (quotation and citation omitted). The defendants pointed to the fact that some of the plaintiffs "had not informed their supervisors of their overtime work, or had not told them that they had not recorded or been paid for hours that the supervisor may have known they worked beyond their scheduled hours." *Id.* at 1319-20. The court found, however, that the plaintiffs were able to create genuine disputes of fact as to whether the supervisors should have known the employees were working beyond their scheduled hours. *Id.* at 1320. This testimony included one plaintiff's stating that her supervisor clocked out her time card when he knew she was still working; another's testifying that his supervisor altered his time sheet; another's stating he

8

told his supervisor that he was working late; another's testifying that her employers knew she was working through lunch because they saw her taking care of children in the lunch room; and another who was told by his supervisor that he should record his scheduled end time on his time sheet regardless of whether he was still working. *Id.* at 1320-21.

The defendant argued, however, that "even if the supervisors were aware that Plaintiffs were working beyond their scheduled hours, the supervisors did not know that Plaintiffs were not recording their time and would not be paid." *Id.* at 1321. The court held that it "believed that these arguments should be made to a jury" because "circumstances were such that, even if these Plaintiffs did not inform their supervisors that they were not recording their hours, a jury could still charge [the employer] with constructive knowledge." *Id.* The court denied the defendant's summary judgment motion as to the plaintiffs who had proffered such testimony. The court dismissed the claims of other plaintiffs who had not presented sufficient evidence that the employer should have known of their overtime work. *Id.* at 1322-23. One such plaintiff testified only that she stayed late but no one told her to work off the clock and she did not inform anyone of this overtime work. She also testified that she did not know how her supervisors could have known she was working overtime. *Id.* at 1323. The court determined this was a "mere scintilla" of evidence not sufficient to create a genuine issue of fact. *Id.*

9

Other courts have considered the issue of whether employees were required to work through meals. *See*, *e.g.*, *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (court granted summary judgment for employers where employee told supervisors she was not getting her meal break but did not tell her supervisors she was not being compensated for not getting her meal break, as there is "no way" employer "should have known" she was not being compensated for missed meals, particularly where there was "no evidence that [employers] discouraged employees from reporting time worked during meal breaks or that they were otherwise notified that their employees were failing to report time worked during meal breaks"); *Hertz v. Woodbury County*, 566 F.3d 775, 783-84 (8th Cir. 2009) (holding police officers in best position to inform employer they were working during meal time and requiring County to "prove a negative" that employees were not performing work that would "perversely incentivize employers to keep closer tabs on employees"); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) (where DEA officer detailed to city was told city could pay only 12.5 hours of overtime per pay period but he submitted paperwork to DEA showing greater number of overtime hours, court found city did not have constructive knowledge because simply knowing of task force's activities was not enough to trigger constructive knowledge; court also emphasized that city had "specific procedures" for employees to follow to be paid overtime and officer had ignored those procedures; to find constructive knowledge under those circumstances would

10

"essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime").

Here, Plaintiff argues that Defendant had actual knowledge of her working through meal breaks because she testified her supervisors would "sit and watch her work." Although Plaintiff admitted that she never told anyone she was working through meal breaks,[2] Plaintiff has stated that she was required to carry a radio at all times and to respond to calls on the radio. Plaintiff contends that any supervisor who called her on the radio would have to know that she was being interrupted on a meal break. Based on the guidance in *Allen*, the court finds that whether the employer had actual knowledge that Plaintiff worked through meal breaks is a question of fact in these circumstances.[3]

---

[2] Plaintiff testified that Jean White, the director of the assisted living center, also knew that she was skipping meal breaks, but Plaintiff again could not say why Ms. White would know this. Unlike Lilly Smith, Ms. White was not even at the assisted living center during the night shift and could not have witnessed any of Plaintiff's work.

[3] The court finds that the mere fact that Plaintiff was required to carry a radio at all times does not necessarily mean *per se* that Plaintiff skipped meal breaks. There is substantial case law discussing whether an employee is "working" when he is "on call." *See, e.g.*, *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720 (8th Cir. 2001); *Rutlin v. Prime Succession, Inc.*, 220 F.3d 737 (6th Cir. 2000); *Andrews v. Town of Skiatook, Okla.*, 123 F.3d 1327 (10th Cir. 1997); *Halferty v. Pulse Drug Co.*, 864 F.2d 1185 (5th Cir. 1989).

Here, however, there is no evidence in the record from which the court or the jury could make a determination of the case-by-case variety necessary in such cases. Rather, the court finds that Plaintiff could attempt to show her supervisors' knowledge of interrupted meal breaks by showing that they had to reach her on the radio because she was out on her meal break and therefore they would have had to have known that they were interrupting her break.

11

As to constructive knowledge, the court finds that the *Allen* court rejected precisely the same argument Defendant makes here: "even if the supervisors were aware that Plaintiffs were working beyond their scheduled hours, the supervisors did not know that Plaintiffs were not recording their time and would not be paid." *See Allen*, 495 F.3d at 1321. The *Allen* court held it "believed that these arguments should be made to a jury" because "circumstances were such that, even if these Plaintiffs did not inform their supervisors that they were not recording their hours, a jury could still charge [the employer] with constructive knowledge." *Id.* The *Allen* court continued:

> Our cases indicate that an employer can be charged with constructive knowledge even when an employee has not alleged a supervisor's direct knowledge. We have said that if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge. . . . An employer is not excused merely because his business requires him to rely on subordinates and personal supervision is not possible. . . . The cases must be rare where prohibited work can be done . . . and knowledge or the consequences of knowledge can be avoided.

*Id.*

The court finds that this holding distinguishes *Allen* from *White*, *Hertz*, and *Newton* and allows for the possibility that a jury could determine an employer had constructive knowledge of an employee's overtime work "if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence." *Id.* The court further finds that given the nature of Defendant's business – personal care facility – and the more

12

limited staffing at night, a jury could determine that Defendant had constructive knowledge of Plaintiff's interrupted meal breaks through reasonable diligence. For this reason, the court DENIES Defendant's motion for summary judgment [49].

### III.  Conclusion

The court DENIES Defendant Retirement Corporation of America Partners, L.P.'s motion for summary judgment [49] and GRANTS NUNC PRO TUNC Defendant Retirement Corporation of America Partners, L.P.'s motion to extend time to file motion for summary judgment [58].

**IT IS SO ORDERED** this 21st day of August, 2014.

> s/*William C. O'Kelley*
> WILLIAM C. O'KELLEY
> SENIOR UNITED STATES DISTRICT JUDGE

13

AO 72A
(Rev.8/82)